IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYNTHIA ORR, STEPHEN ORR, and
PATRICIA PAIZ,

      Plaintiffs,

vs.                                              Civ. No. 01-1365 JP/RHS

THE CITY OF ALBUQUERQUE and
MARY BETH VIGIL,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On December 2, 2002, the Defendants filed Defendants' Motion for Summary Judgment (Doc. No. 39).  The parties have now filed their respective supplemental briefs on the Defendants' Motion for Summary Judgment thereby making the Defendants' Motion for Summary Judgment ripe for ruling.  On August 5, 2003, the Plaintiffs filed Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 102).  Plaintiffs' Motion for Partial Summary Judgment is likewise ripe for ruling.  Having considered the briefs and relevant law, the Court concludes that the Defendants' Motion for Summary Judgment should be granted in part, and that the Plaintiffs' Motion for Partial Summary Judgment should be denied.

I.  Background

The Plaintiffs are sworn law enforcement officers employed by the Albuquerque Police Department (APD).  Plaintiff Cynthia Orr and Plaintiff Stephen Orr are married.  In their First Amended Complaint for Civil Rights Violations and Damages (Doc. No. 3)("First Amended Complaint") the Plaintiffs sued the City of Albuquerque and Mary Beth Vigil, the personnel officer for APD.  This lawsuit is based on alleged sex discrimination, pregnancy discrimination,

and unlawful retaliation resulting from the Defendants' determination of the Plaintiffs' parental leave.

The female Plaintiffs contend in Count I that the Defendant City of Albuquerque (Defendant City) violated Title VII of the Civil Rights Act of 1964, as amended, by engaging in sex and pregnancy discrimination.  In Count II, the Plaintiffs allege that the Defendant City violated Title VII by retaliating against them.  The female Plaintiffs allege in Count III that the Defendants violated their Fourteenth Amendment right to equal protection in contravention of 42 U.S.C. §1983.[1]   Plaintiff Stephen Orr alleges in Count IV that the Defendants retaliated against him in violation of 42 U.S.C. §1983 by unlawfully interfering with his right to engage in protected speech.  In Count V, the Plaintiffs allege that the Defendant City breached the employment contracts it had with the Plaintiffs.  Finally, the Plaintiffs contend in Count VI that the Defendants violated the New Mexico Human Rights Act (NMHRA) by engaging in sex and pregnancy discrimination and unlawful retaliation.

A.  The Female Plaintiffs

Unless otherwise noted, the following material facts are undisputed.

Plaintiff Cynthia Orr, a violent crimes detective, originally planned to take six months of paid leave from work following the birth of her first child, i.e., parental leave.  Her first child was

---

[1]The female Plaintiffs also assert that they are alleging a Fourteenth Amendment due process claim in Count III.  However, a plain reading of Count III of the First Amended Complaint reveals no allegation of a due process claim.  In Plaintiffs' Amended Response in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 55), the following statement is found buried in footnote 4.  "In the alternative, Plaintiffs request leave to amend their complaint to add this specific legal contention to Count III."  This was not the proper way to make a request to amend their First Amended Complaint.  D.N.M. LR-Cv 7 sets forth the requirements for motion practice in the District of New Mexico.

born April 29, 2000.  The evidence does not indicate how Plaintiff Cynthia Orr first intended to cover her parental leave.

When Plaintiff Cynthia Orr found out she was pregnant she went to the personnel office and asked personnel employees what she had to do take that parental leave.  No one at the personnel office gave her any paperwork or policies with respect to parental leave.  After discussing her plan for parental leave with Lieutenant Nogales, Plaintiff Cynthia Orr's supervisor at the District Attorney's Liaison Office, Lieutenant Nogales suggested that Plaintiff Cynthia Orr work part-time from her home after the baby was born.  Consequently, Plaintiff Cynthia Orr requested to use over 300 hours of compensatory time[2], take vacation time[3], take sick leave[4], and work part-time for her parental leave.  Plaintiff Cynthia Orr did not request FMLA leave.  Plaintiff Cynthia Orr, in fact, took approximately three weeks of compensatory time after her baby was born by cesarean section and then began to work part-time.

Sometime in May 2000, one of Defendant Vigil's staff members informed Defendant Vigil that Plaintiff Cynthia Orr had given birth to a baby and was taking compensatory time to cover her parental leave.  Consequently, Defendant Vigil contacted Plaintiff Cynthia Orr and informed her that under the applicable draft City of Albuquerque Rules and Regulations, Administrative

---

[2]Plaintiff Cynthia Orr exceeded the APD 150 hour cap on the accumulation of compensatory time with the approval of her immediate supervisors. Under APD rules, if an APD officer exceeds the compensatory time cap, that officer cannot accumulate anymore compensatory time until the officer's compensatory time amounts to less than the cap.

[3]Plaintiff Cynthia Orr wanted to use her vacation time because there is a cap on how much vacation time can be accumulated.

[4]The Plaintiffs did not want to use sick leave first, if at all, for parental leave because sick leave can be applied toward determining an earlier retirement date.  Moreover, there is no cap on the accumulation of sick leave.

3

Instruction No. 7-13, and the applicable Albuquerque Police Officer's Association (APOA) contract provisions regarding the Family Medical Leave Act (FMLA) she had to use sick leave for her parental leave.[5]  According to Plaintiff Cynthia Orr, Defendant Vigil told her that she could not work for 12 weeks because of her pregnancy.  Defendant Vigil denies that she told Plaintiff Cynthia Orr that she had to take 12 weeks of parental leave.  Regardless of whether Defendant Vigil told Plaintiff Cynthia Orr to take 12 weeks of parental leave, Plaintiff Cynthia Orr's leave record was changed to reflect that sick leave was used for the parental leave.[6]  Moreover, the personnel office would not recognize the fact that Plaintiff Cynthia Orr had worked part-time for some of her parental leave and did not allow Plaintiff Cynthia Orr to take vacation time under the FMLA. Plaintiff Cynthia Orr ultimately took 13 weeks of parental leave.

On June 11, 2000, Plaintiff Cynthia Orr wrote a memo to APD Chief Gerald Galvin requesting six months of FMLA leave.  Plaintiff Cynthia Orr contends that Defendant Vigil told her to write the June 11, 2000 memo if she wanted to get paid for her part-time work (20 hours). In November 2000, Plaintiff Cynthia Orr filed an Equal Employment Opportunity Commission (EEOC) complaint with respect to the parental leave issues.

With regard to Plaintiff Paiz, a detective in the Crime Stoppers Unit, and the birth of her child on July 28, 2000, Plaintiff Paiz planned to use 515 hours of compensatory time[7] in

---

[5]The parties disagree as to whether Defendant Vigil properly applied Defendant City's FMLA rules and regulations and the APOA agreement to the female Plaintiffs.

[6]Plaintiff Cynthia Orr asserts that her time slips were altered without her permission to reflect the sick leave.

[7]Plaintiff Paiz exceeded the APD 150 hour cap on the accumulation of compensatory time with the approval of her immediate supervisors.

conjunction with part-time work for her parental leave.  Plaintiff Paiz chose to not to use FMLA

leave for her parental leave.  Plaintiff Paiz's immediate supervisors approved her request to use

compensatory time and work part-time for parental leave.  Although Plaintiff Paiz returned to full-

time work after approximately ten weeks of parental leave[8], she claims that Defendant Vigil told

her she had to take 12 weeks of parental leave because of her pregnancy.  Defendant Vigil denies

that she told Plaintiff Paiz that she had to take 12 weeks of parental leave.

      Sometime in August 2000, one of Defendant Vigil's staff members informed Defendant

Vigil that Plaintiff Paiz had given birth to a baby and was taking compensatory leave to cover her

parental leave.  Defendant Vigil, therefore, contacted Plaintiff Paiz and informed her that under

the applicable draft City of Albuquerque Rules and Regulations, Administrative Instruction No. 7-

13, and the applicable APOA contract provisions regarding the FMLA she had to use sick leave

for her parental leave.

      Plaintiff Paiz subsequently requested a meeting with Deputy Chief Ruben Davalos and

Defendant Vigil regarding the changes made to her time slips to reflect sick leave for her parental

leave.  A meeting was held between Deputy Chief Davalos, Defendant Vigil, Mary Molina-

Mescall, and Plaintiff Paiz.  At the meeting, Deputy Chief Davalos stated that he believed an

officer could use compensatory time, vacation time, or sick leave under the FMLA. Deputy Chief

Davalos noted that he had taken compensatory time for kidney problems.  Deputy Chief Davalos'

kidney problems occurred in 1999.  Upon learning at the meeting that Deputy Chief Davalos had

---

[8]Sometime during Plaintiff Paiz's parental leave, the Defendant City began to order
employees to take compensatory time if they had more than 250 hours of compensatory time.
Apparently, city employees including APD officers other than the Plaintiffs had also exceeded the
compensatory time cap.

used compensatory time instead of sick leave for FMLA purposes, Defendant Vigil attempted to change Deputy Chief Davalos' leave record to reflect sick leave.  She was, however, unable to change the leave record because she could not pinpoint what days of compensatory time were used for his health problems.  Even so, Deputy Chief Davalos has since been required to take sick leave before taking any other leave under the FMLA for absences based on a serious medical condition.

After the meeting with Deputy Chief Davalos, Ms. Molina-Mescall, and Defendant Vigil, Plaintiff Paiz was under the impression that she could use her compensatory time for her parental leave and work part-time.  Plaintiff Paiz began to submit time slips showing compensatory time and part-time work. However, some weeks later, Defendant Vigil following legal counsel Judy Kelly's directive changed Plaintiff Paiz's leave records to reflect sick leave.[9]  Plaintiff Paiz further stated that her captain told her that she was not to accumulate any more compensatory time. Plaintiff Paiz states that she did not accumulate compensatory time again until 2002.

Plaintiff Paiz filed a charge of pregnancy discrimination with the EEOC in December 2000.  In January 2001, the female Plaintiffs unsuccessfully engaged in an EEOC mediation. Plaintiff Cynthia Orr alleges that on March 14, 2001, Paul Pacheco, the APD union president at that time, harassed her about the EEOC complaint and the female Plaintiffs' refusal to settle with the Defendant City at the EEOC mediation.  Apparently, male police officers had contacted Mr. Pacheco to complain about not being able to use their compensatory time for FMLA leave as a

---

[9]Plaintiff Paiz asserts that her time slips were actually forged and altered to reflect the sick leave.  Moreover, Ms. Kelly indicated in her deposition that although she would have instructed Defendant Vigil to use sick leave instead of compensatory time for FMLA leave, she would not have instructed Defendant Vigil to prohibit vacation time for FMLA leave.

result of Plaintiffs Cynthia Orr and Paiz filing the EEOC complaint and not settling the case at the EEOC mediation.

In August 2001, the APOA contract was modified to specifically allow police officers to use compensatory time in connection with FMLA leave.  Defendant Vigil then notified the female Plaintiffs that she could now change their leave records to reflect the use of compensatory time for their parental leave.  While Plaintiff Paiz accepted Defendant Vigil's offer to have her leave records changed to reflect the use of compensatory time for her parental leave, Plaintiff Cynthia Orr did not.

Plaintiff Cynthia Orr became pregnant again in October 2001 and was scheduled for a second cesarean section.  Her second child was born on June 16, 2002.   Although she had been assigned to restrictive duty because of the pregnancy, Plaintiff Cynthia Orr was still dispatched to violent crimes scenes.  Plaintiff Cynthia Orr planned to take 12 weeks of FMLA leave after the birth of her child due to a serious health condition, i.e., recovery from a cesarean section, and Plaintiff Stephen Orr planned to take 12 weeks of parental leave under the FMLA and an additional nine months of parental leave composed of sick leave, vacation time, and compensatory time.  Plaintiff Stephen Orr's supervisor, however, convinced him to take only a total of six months of parental leave.

Apparently, Plaintiff Stephen Orr's leave request letter was lost although Plaintiff Stephen Orr was assured by Captain Marie Saenz and Deputy Chief Ray Schultz that it was approved.  However, once Plaintiff Stephen Orr received the original leave request it was approved as to only the 12 weeks of FMLA leave and indicated that if Plaintiff Cynthia Orr was going to take parental leave, the total amount of leave between the two of them could not exceed 12 weeks.  As

7

a result of these directives, Plaintiffs Cynthia Orr and Stephen Orr planned to each take six weeks of sick leave under the FMLA.

Plaintiff Cynthia Orr claims that the stress resulting from dealing with these new leave issues caused her to have preterm contractions, distorted vision, and tingling in the hands and feet. Plaintiff Cynthia Orr at one point was admitted to a hospital for stress related complications. According to Plaintiff Cynthia Orr, her physician recommended that she change her job position. Following her physician's advice, Plaintiff Cynthia Orr was able to ultimately transfer to the inspections accreditation unit.

After the birth of her second child in June 2002, Plaintiff Cynthia Orr's physician cleared her to return to work after eight weeks although Plaintiff Cynthia Orr had planned to return to work after six weeks.  Apparently, Plaintiff Cynthia Orr made a subsequent request for an additional 12 weeks of leave which was not approved due to staffing shortages.  Plaintiff Cynthia Orr, however, contends that staffing levels had improved since she had given birth to her first child and she was able to request six months of parental leave previously.  Plaintiff Cynthia Orr also asserts that because she was not allowed to take an additional 12 weeks of leave, her breast milk production fell and her baby had trouble drinking supplemental milk.

Plaintiff Cynthia Orr further states that contrary to the usual custom at APD she was ordered to return her APD patrol car the weekend before she returned to work from her second parental leave.  Plaintiff Cynthia Orr complied with that order and lost the use of that patrol car for one day.  Plaintiff Stephen Orr was also ordered to return his APD patrol car although he had already been back at work for two weeks.  Plaintiff Stephen Orr, however, did not comply with that order and was subsequently told not to return the patrol car.

B.  Plaintiff Stephen Orr

At the January 2001 EEOC mediation, the female Plaintiffs identified Plaintiff Stephen Orr and Richard Dilley as witnesses in the EEOC proceeding.  The female Plaintiffs indicated at the mediation that Plaintiff Stephen Orr's supervisors allowed him to use two weeks of compensatory time for his parental leave when Plaintiff Cynthia Orr gave birth to their child in April 2000 and Richard Dilley was allowed to use compensatory time for his parental leave.

The day after the EEOC mediation was held, Defendant Vigil contacted Plaintiff Stephen Orr and Richard Dilley to inform them that she would be changing their leave records to reflect the use of sick leave instead of compensatory time for their parental leave.  Defendant Vigil contends that if she had known that Plaintiff Stephen Orr and Richard Dilley first requested compensatory leave in connection with their parental leave, she would have denied their requests and insisted on the use of sick leave at that time.[10]  The Wage and Hour Division subsequently informed Defendant Vigil that she could not make the changes to the leave records of Plaintiff Stephen Orr and Richard Dilley because of the significant passage of time since the parental leave was taken.  Defendant Vigil, therefore, corrected their leave records to reflect compensatory time for the parental leave.  Plaintiff Stephen Orr complains that these parental leave changes as well as the parental leave issues associated with birth of his second child caused him stress related health problems.

---

[10]The leave request form for compensatory time does not require an explanation or reason for the requested compensatory time.

C.  Financial Loss

Allen M. Parkman, Ph.D., J.D., an economic consultant, found that Plaintiff Cynthia Orr would probably suffer a financial loss of $9,125 by being required to take 12 weeks of sick leave in 2000.  Dr. Parkman found that Plaintiff Paiz would probably suffer an economic loss of $4,703 by being required to take nine weeks of sick leave in 2000.  This amount, however, does not reflect the fact that Plaintiff Paiz subsequently had her leave record changed back to reflect the use of compensatory time for that time period.

D.  Other City Employees' Use of Compensatory Time in Relation to FMLA Leave

The Plaintiffs have presented evidence of three female employees from the Bernalillo County Detention Center (BCDC) who filed EEOC charges of pregnancy discrimination and two APD female employees, other than the Plaintiffs, who filed EEOC charges of pregnancy discrimination.  The Plaintiff have also presented evidence of four male APD employees who have used compensatory time for parental leave and six male APD employees who have used vacation time for parental leave.

The Defendants ask the Court to strike the evidence regarding the male APD employees because their statements were originally not made under penalty of perjury.  Those statements have, however, since been certified and signed under penalty of perjury.  Accordingly, those statements will not be stricken.  *See* 28 U.S.C. §1746 (allowing the use of unsworn declarations made under penalty of perjury).

E.  Defendant Vigil's Employment Position with APD

Defendant Vigil is the personnel officer or manager for APD and supervises seven employees.  Defendant Vigil's current supervisor is the chief of police.  Prior to 2002, Defendant

Vigil's supervisor was APD Deputy Director Mary Molina-Mescall.  In a resumé, Defendant Vigil

described her job duties as developing, revising, and initiating administrative policy for the

Personnel Resources Activity.  Defendant Vigil explained that those job duties relate to the

preparation of statistical information.  Her job duties also include being a Probation Committee

member.  The Probation Committee makes recommendations to the chief of police as to whether

or not a Patrol Officer Second Class should be released from probationary status.  In addition,

Defendant Vigil oversees and coordinates personnel activities within APD subject to the direction

of higher level supervisors or management.  Defendant Vigil describes herself as a middle

manager.

## II.  Discussion

   The Defendants argue that they are entitled to summary judgment for several reasons.

First, the Defendants argue that Defendant Vigil is entitled to qualified immunity for the §1983

claims.  Second, the Defendants argue that there is no municipal liability against the Defendant

City for alleged violations of §1983.  Third, the Defendants argue that the Plaintiffs have not

shown that there was Title VII discrimination or retaliation.  Finally, the Defendants argue that

the Plaintiffs have not shown that there was a breach of contract.  The Defendants ask the Court

to award them attorney's fees and costs if they prevail on their Motion for Summary Judgment.

The Plaintiffs argue, on the other hand, that they are entitled to partial summary judgment with

respect to the Fourteenth Amendment equal protection claim under §1983 and the Title VII claim

which alleges that the Defendant City retaliated against Plaintiff Stephen Orr.

A.  Defendants' Requests to Strike Various Portions of Plaintiffs' Briefs

The Defendants request that the Court strike the following portions of Plaintiffs' briefs: 1) the Plaintiffs' EEOC determinations (Exs. 12-14) attached to the Plaintiffs' amended response, 2) Plaintiffs' Statement of Additional Facts included in the Plaintiffs' amended response, and 3) Plaintiffs' supplemental response and surreply.  The Court will not strike these items.[11]  Instead, the Court will consider these items in due course and apportion them the weight they are entitled to under the law.  *See Pinkerton and Laws Co., Inc. v. Roadway Exp., Inc.*, 650 F.Supp. 1138, 1141 (N.D. Ga. 1986)(the Court assesses the admissibility of the evidence presented through affidavits, deposition, or other methods as part of the Court's consideration of a motion for summary judgment).

B.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin*

---

[11]The Court notes that "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one."  *See Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1331 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).

*Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a

reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by

resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939

F.2d at 891.

  C.  Whether Defendant Vigil is Entitled to Qualified Immunity

  The Defendants argue first that Defendant Vigil is entitled to qualified immunity for the

§1983 claims.  Summary judgment motions involving a qualified immunity defense are determined

somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472,

1475 (10th Cir. 1995). When a defendant raises qualified immunity in a motion for summary

judgment, "the burden shifts to the plaintiff to meet a strict two-part test."  *Nelson v. McMullen*,

207 F.3d 1202, 1206 (10th Cir. 2000). "'First, the plaintiff must demonstrate that the defendant's

actions violated a constitutional or statutory right. Second, the plaintiff must show that the

constitutional or statutory rights the defendant allegedly violated were clearly established at the

time of the conduct at issue.'"  *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th

Cir. 1995)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of*

*Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  The plaintiff, however, "is not required to show

that the very conduct in question has previously been held unlawful."  *Sh. A. ex rel. J. A. v.*

*Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003).  The plaintiff is

required to demonstrate the unlawfulness was "apparent" in light of established law.
Generally, this requires that the plaintiff demonstrate a "substantial correspondence
between the conduct in question and prior law allegedly establishing that the defendant's
actions were clearly prohibited."

*Id.* (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255-56 (10th Cir. 1998)).  If, and only

if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear

the traditional burden of showing "'that there are no genuine issues of material fact and that he or

she is entitled to judgment as a matter of law.'"  *Nelson*, 207 F.3d at 1207 (quoting *Albright*, 51

F.3d at 1535)).

### 1.  The Female Plaintiffs' Equal Protection Claim

The Defendants contend that Defendant Vigil did not violate any of the female Plaintiffs'

equal protection rights by requiring the female Plaintiffs to comply with what she believed were

the applicable FMLA leave rules and regulations.  Moreover, the Defendants note that Defendant

Vigil ultimately allowed the female Plaintiffs to take compensatory time in connection with their

parental leave.  The female Plaintiffs argue, on the other hand, that Defendant Vigil violated their

constitutional right to equal protection under the "class of one" doctrine of equal protection.

"[V]iable equal protection claims may be brought by a '"class of one," where the plaintiff alleges

that she has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment.'"  *Mimics, Inc. v. Village of Angel Fire*, ___

F.Supp.2d ___, 2003 WL 21990004 *17 (D.N.M.)(quoting *Village of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000)(citations omitted)).

In this case, the undisputed evidence shows that male APD officers were allowed to use

compensatory time for parental leave just as the female Plaintiffs were also initially allowed to do

so.  The undisputed evidence also shows that male APD officers arranged to take parental leave
with compensatory time through their immediate supervisors just as the female Plaintiffs initially
did.  The female Plaintiffs as well as the male APD officers did not have to indicate on the
compensatory time form that the compensatory time was for parental or FMLA leave.  If
Defendant Vigil had not known through her staff or otherwise that the female Plaintiffs had given
birth to children, the female Plaintiffs could very well have taken their parental leave as they had
initially planned with their supervisors.  As Defendant Vigil indicated, if she had known of male
APD officers or others who had taken compensatory time for parental or FMLA leave, she would
have changed that leave to sick leave.  In fact, Defendant Vigil attempted to do exactly that with
respect to Plaintiff Stephen Orr and Richard Dilley.  Interestingly, the Plaintiffs admit that the
Defendants upset male APD officers by retroactively changing the leave records of those officers
to reflect the use of sick leave for FMLA leave.  Defendant Vigil also tried to change Deputy
Chief Davalos' compensatory time to sick leave but could not determine which leave dates
qualified as FMLA leave dates.  She did, however, require Deputy Chief Davalos to use sick leave
for future FMLA leave.  In addition, the female Plaintiffs' contention that Defendant Vigil
required them to take 12 weeks of FMLA leave because of their pregnancies is weakened by the
undisputed facts that Plaintiff Cynthia Orr originally wanted six months of parental leave but
actually took 13 weeks of parental leave and Plaintiff Paiz only took approximately 10 weeks of
parental leave.  Although the Plaintiffs have presented evidence of a personnel office which was
unaware of the leave arrangements made between officers and their supervisors, the Plaintiffs
have failed to present evidence that Defendant Vigil intentionally treated the female Plaintiffs
differently from the other APD officers.  Consequently, the Plaintiffs have not demonstrated that

Defendant Vigil's actions violated the equal protection clause of the Fourteenth Amendment.

Defendant Vigil is, therefore, entitled to qualified immunity with respect to the female Plaintiffs'

equal protection claim.  Defendants' motion for summary judgment will be granted as to the

female Plaintiffs' equal protection claim against Defendant Vigil and Plaintiffs' Motion for Partial

Summary Judgment will be denied as to that claim.

### 2.  Plaintiff Stephen Orr's First Amendment Retaliation Claim

The Plaintiffs assert that Defendant Vigil violated Plaintiff Stephen Orr's First Amendment

right to freedom of expression by retaliating against him for agreeing to be a witness in the female

Plaintiffs' EEOC case.  According to the Plaintiffs, the retaliation occurred the day after the

EEOC mediation when Defendant Vigil changed Plaintiff Stephen Orr's parental leave to reflect

sick leave instead of compensatory time.

To decide whether a public employer violated an employee's right to free speech under the

First Amendment, the courts apply the four-step test articulated in *Pickering v. Board of Ed. of*

*Tp. High School Dist. 205*, 391 U.S. 563 (1968).  *See Burn v. Board of County Com'rs of*

*Jackson County*, 330 F.3d 1275, 1285 (10th Cir. 2003).

> The first three steps of the Pickering test are (1) whether the speech touches on a matter
> of public concern, (2) whether the employee's interest in commenting on matters of public
> concern outweighs the interest of the state in promoting the efficiency of the public service
> it performs through its employees, and (3) whether the protected speech was a substantial
> or motivating factor behind the adverse employment decision.  If these three factors are
> met, (4) the burden shifts to the employer to establish that it would have reached the same
> decision in the absence of the protected conduct.

*Id*. at n.7 (citation omitted).  The first two steps of the *Pickering* test are determined as a matter

of law while the last two steps of the *Pickering* test involve questions of causation and therefore

questions of fact. *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003)(citations omitted).

16

The Defendants argue that Plaintiff Stephen Orr's name on a list of potential EEOC witnesses does not constitute speech let alone protected speech.[12]  The Plaintiffs, however, correctly argue that Plaintiff Stephen Orr's agreement to be an EEOC witness is speech on a matter of public concern.  An intent to act as a witness in an administrative or judicial proceeding on behalf of an employee who is claiming discrimination is speech which relates to a matter of public concern.  *Kostishak v. Mannes*, 1998 WL 196607 *5 (4th Cir.).  *See also, e.g., Paradis v. Montrose Memorial Hosp.*, 157 F.3d 815, 818 (10th Cir. 1998)(citing *Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir. 1992)(statements opposing alleged employment discrimination are protected speech)); *Kaible v. U.S. Computer Group, Inc.*, 27 F.Supp.2d 373, 379 (E.D. N.Y. 1998)(statements to lawyers constitute participation in EEOC charge).  The Court, therefore, finds as a matter of law that Plaintiff Stephen Orr's intent to be an EEOC witness constitutes speech which touches on a matter of public concern.

Next, the Defendants argue that listing Plaintiff Stephen Orr as an EEOC witness was not a motivating factor in Defendant Vigil's decision to change his parental leave from compensatory time to sick leave.  Considering the close proximity in time between the EEOC mediation and Defendant Vigil's decision to change Plaintiff Stephen Orr's parental leave, a reasonable juror could determine that the revealing of Plaintiff Stephen Orr as an EEOC witness motivated Defendant Vigil to change his parental leave.  Viewing the evidence in the light most favorable to the Plaintiffs, the Court will assume that the Plaintiffs have met the third step of the *Pickering*

---

[12]The Defendants also argue that the submission of Plaintiff Stephen Orr's request for compensatory time to cover his parental leave does not constitute speech for First Amendment purposes.  The Plaintiffs, however, are not alleging that the submission of the request for compensatory time is speech for First Amendment purposes.

test.  Since the parties have not argued whether the Plaintiffs have met the second step of the *Pickering* test, the Court will assume that the Plaintiffs have met that step as well.

The burden then shifts to the Defendants to show that Defendant Vigil would have nonetheless changed Plaintiff Stephen Orr's parental leave from compensatory time to sick leave had he not been listed as an EEOC witness.  The Defendants have carried that burden by providing uncontradicted evidence from Defendant Vigil that if she had known at the time Plaintiff Stephen Orr was taking his parental leave that he was using compensatory time she would have required him to take the leave in accordance with the FMLA and the applicable City of Albuquerque Rules and Regulations.  Affidavit of Mary Beth Vigil at ¶8, Exhibit A (attached to Defendants' reply).  At that time, Defendant Vigil understood that sick leave was required to be used first under the FMLA and the applicable City of Albuquerque Rules and Regulations.  *Id.* at ¶3.  It is undisputed that Defendant Vigil would have changed Plaintiff Stephen Orr's parental leave to sick leave even if Plaintiff Stephen Orr had not agreed to be an EEOC witness.  Under these circumstances, the Plaintiffs have not come forward with sufficient evidence to show that Defendant Vigil violated Plaintiff Stephen Orr's right to free speech under the First Amendment.  Defendant Vigil is, therefore, entitled to qualified immunity with respect to the First Amendment claim brought by Plaintiff Stephen Orr.  The Defendants's Motion for Summary Judgment will be granted as to Plaintiff Stephen Orr's §1983 claim against Defendant Vigil.

D.  Municipal Liability Under §1983

The Defendants argue next that the Defendant City is not liable for the Plaintiffs' §1983 claims.  A municipality may not be held liable on a theory of *respondeat superior* under 42 U.S.C. §1983. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1189 (10th Cir. 2003)(citations

omitted).  To establish municipal liability under §1983, "the plaintiff must show 'that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'"  *Id.* (citing *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001)).  To establish municipal liability under the municipal policy or custom theory, the plaintiff "must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."  *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993)(citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  To establish municipal liability under the acts of a final policymaker, the court must first determine as a matter of law whether the city official is a final policymaker. *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1210 (10th Cir. 1998)(quoting *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995)).  Section 1983 municipal liability based on the decisions of a final policymaker "'attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Ledbetter*, 318 F.3d at 1189 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  "Municipal liability arises even if the official's decision is specific to a particular situation."  *Dill*, 155 F.3d at 1211 (citing *Randle*, 69 F.3d at 447).  In deciding whether a city official is a policymaker, the courts "consider whether (1) the official's discretionary decisions are 'constrained by general policies enacted by others;' (2) the decisions are reviewable by others; and (3) the decisions were within the official's authority."  *Id.* (citing *Randle*, 69 F.3d at 448).

The Plaintiffs allege municipal liability under both the policy or custom theory and the final policymaker theory.  With regard to the policy or custom theory, the undisputed facts show that at the very least the Defendant City, through its personnel office, had a custom, if not  an official policy, requiring employees to take sick leave under the FMLA instead of taking compensatory time under the FMLA.  The Plaintiffs allege that this custom or policy directly caused the female Plaintiffs to be discriminated against based on their sex and pregnancies.  As discussed earlier, Defendant Vigil stated she would have applied this custom or policy to anyone claiming FMLA leave if she knew that they were in fact taking FMLA leave.  Since Defendant Vigil could not always discern from the compensatory time leave slips if that leave was being taken for FMLA reasons, she could not consistently apply the Defendant City's FMLA custom or policy.  Consequently, Defendant Vigil applied the Defendant City's FMLA custom or policy to the Plaintiffs only after she found out the reasons for their compensatory time.  Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that a reasonable juror would not find a direct causal link between the Defendant City's FMLA custom or policy and the alleged constitutional violation of the female Plaintiffs' right not to be discriminated against based on their sex and pregnancies.

Next, the Plaintiffs allege that Defendant Vigil is a final policymaker who violated the female Plaintiffs' constitutional rights.  The evidence presented here indicates that Defendant Vigil was applying what she believed was the Defendant City's FMLA policy to the Plaintiffs' parental leave situations.  There is no evidence that Defendant Vigil formulated that policy or that she believed she could use her own discretion to deviate from that policy.  In fact, the evidence shows that Ms. Kelly, counsel for APD, instructed Defendant Vigil to change Plaintiff Paiz's

compensatory time to sick leave.  Moreover, there is no evidence that the Plaintiffs could not have appealed Defendant Vigil's decisions to her superiors.  Under these circumstances, the Court concludes that as a matter of law, Defendant Vigil was not a final policymaker for purposes of municipal liability under §1983.  Summary judgment will be granted with respect to the Plaintiffs' §1983 claims against Defendant City.

E.  Title VII:  Sex and Pregnancy Discrimination

The Defendants also claim that they are entitled to summary judgment on the female Plaintiffs' Title VII sex and pregnancy discrimination claims.[13]  A plaintiff alleging discrimination may prove intentional discrimination through either direct or indirect evidence of discrimination. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  In this case, the Plaintiffs allege indirect evidence of sex and pregnancy discrimination.  In analyzing circumstantial evidence of discrimination under Title VII, courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.  *Id*.  If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to demonstrate a legitimate nondiscriminatory reason for its action.  *Id*.  If the employer offers a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason is mere pretext and unworthy of belief.  *Id*.

To show a *prima facie* case of discrimination under Title VII, the plaintiff must demonstrate that he or she is a member of a protected class, suffered an adverse employment

---

[13]"Claims brought under the [Pregnancy Discrimination Act] are analyzed in the same way as other Title VII claims of disparate treatment."  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)(citation omitted).

action, and that the employer treated similarly situated employees differently. *Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998). The parties do not contest that the female Plaintiffs belong to a protected class. The parties, however, dispute whether the female Plaintiffs suffered an adverse employment action. The Defendants argue that there was no adverse employment action because Plaintiff Paiz ultimately had her parental leave changed to reflect that it was covered by compensatory time and Plaintiff Cynthia Orr can also ask to have her parental leave changed to reflect the use of compensatory time. The female Plaintiffs argue that they suffered financial losses in not being able to accumulate more compensatory time and not being paid for part-time work. Plaintiff Cynthia Orr also argues that the events surrounding her second pregnancy constituted adverse employment actions.

The phrase "adverse employment action" is liberally defined in the Tenth Circuit. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003)(citation omitted). An adverse employment action occurs when there is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a signifcant change in benefits." *Id*. (citation and quotations omitted). Although the Tenth Circuit has found an adverse employment action when, for example, an employer forces an employee to "go through several hoops," mere inconveniences or alterations of job responsibilities are insufficient to constitute adverse employment actions. *Robleado v. Deffenbaugh Industries, Inc.*, 136 F.Supp.2d 1179, 1189 (D. Kan. 2001), *aff'd*, 33 Fed. Appx. 480 (2002)(quoting *Trujillo v. New Mexico Dept. of Corrections*, 1999 WL 194151 *3 (10th Cir.). *See also Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998). "'[T]here are many interlocutory or mediate decisions having no immediate effect upon employment

conditions which were not intended to fall within the direct proscriptions ... of Title VII.'"

*Robleado*, 136 F.Supp.2d at 1189 (quoting *Fortner v. State of Kan.*, 934 F.Supp. 1252, 1268 (D.

Kan. 1996), *aff'd*, 122 F.3d 40 (10th Cir. 1997)(quotations omitted)).

    1.  Adverse Employment Action:  Plaintiff Paiz

An employer's "decision to reprimand or transfer an employee, if rescinded before the

employee suffers a tangible harm, is not an adverse employment action."  *Pennington v. City of*

*Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)(citing *Breaux v. City of Garland*, 205 F.3d

150, 158 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000); *Dennis v. County of Fairfax*, 55 F.3d 151,

156 (4th Cir. 1995); *Blalock v. Dale County Bd. of Educ.*, 84 F.Supp.2d 1291, 1311 (M.D. Ala.

1999)).  *But see Molnar v. Booth*, 229 F.3d 593, 600-01 (7th Cir. 2000)(reversing a negative

evaluation did not preclude the negative evaluation from being considered an adverse employment

action).  In this case, the Defendants rescinded their previous decision to change Plaintiff Paiz's

parental leave to reflect sick leave.  That situation is similar to the situations examined in

*Pennington* and the cases cited therein.  The issue, under the reasoning in those cases, is whether

during the interim prior to the recission of the decision to change Plaintiff Paiz's parental leave to

sick leave Plaintiff Paiz suffered from any kind of significant harm or change to her employment

status or benefits.[14]  Dr. Parkman, an economic consultant for the Plaintiffs, calculated that

Plaintiff Paiz would probably suffer a financial loss of $4,703 because of the initial decision to

---

[14]Since the Tenth Circuit's definition of adverse employment action refers to a
"significant" change in employment status or benefits, the Court will not apply that part of the
holding in *Pennington* which requires a "tangible" harm.  Instead, in complying with the Tenth
Circuit's definition of adverse employment action, the Court will determine whether Plaintiff Paiz
suffered from a significant change in her employment status or benefits prior to the Defendants'
recission of their decision to apply sick leave to Plaintiff Paiz's parental leave.

charge her parental leave as sick leave.  However, Dr. Parkman admits that he did not address the effect of the reinstatement of Plaintiff Paiz's sick leave time and the ultimate use of compensatory time instead of sick leave.  Consequently, Dr. Parkman's assessment of Plaintiff Paiz's economic harm is both speculative and based on inaccurate facts.  "Speculative harm does not constitute adverse employment action."  *Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001).

Moreover, the fact that Plaintiff Paiz was not allowed to accumulate more compensatory time during her parental leave because she had already capped her compensatory time and presumably could not earn more compensatory time until she had gone below the cap is not a significant change to her employment benefits.  *See Smith v. County of Hamilton*, 34 Fed. Appx. 450, 456 (6th Cir. 2002)(loss of opportunity for compensatory time was not an adverse employment action); *Johnson-Carter v. B.D.O. Seidman, LLP*, 169 F.Supp.2d 924, 938 (N.D. Ill. 2001)(a "single denial of compensatory time off also does not constitute an adverse employment action."); *La Marco v. New York State Nurses Ass'n*, 118 F.Supp.2d 310, 320 (N.D. N.Y. 2000)(loss of ability to accumulate compensatory time in excess of that allowed by company policy but retention of ability to accumulate additional compensatory time under the company policy does not amount to an adverse employment action).  Furthermore, leave scheduling decisions generally do not constitute adverse employment actions.  *Dunlap v. Kansas, Dept. of Health & Environment*, 211 F.Supp.2d 1334, 1343 (D.Kan. 2002)(citations omitted).

Plaintiff Paiz also complains that she was not paid for part-time work performed during her parental leave.  Yet, Plaintiff Paiz received paid sick leave for the entire period of her parental leave.  A reasonable jury would not find that Plaintiff Paiz suffered a significant change in her

employment status or benefits prior to the time the Defendants changed Plaintiff Paiz's parental leave to reflect that it was covered by compensatory time.  The Defendants, therefore, did not engage in an adverse employment action with respect to Plaintiff Paiz.

      2.   Adverse Employment Action:  Plaintiff Cynthia Orr

Dr. Parkman found that "[because of her loss of 12 weeks of sick leave in 2000, [Plaintiff Cynthia Orr] <u>will most likely</u> retire with that much less service credit and somewhat lower earnings her last year."  Emphasis added.  Dr. Parkman calculated that Plaintiff Cynthia Orr could experience a $9,125 economic loss for the change in her parental leave with respect to her first pregnancy.  Dr. Parkman's analysis assumed that Plaintiff Cynthia Orr will retire from APD, that the pension factor of three percent will not be modified in the future, that the term of service for retirement eligibility will not be modified in the future, and that the cost of living adjustment rules also will not be modified in the future.  These assumptions produce a speculative harm.  *See Aquilino*, 268 F.3d at 936.  Furthermore, the undisputed fact that Plaintiff Cynthia Orr can still substitute compensatory time for the sick leave that was used, and thereby have the charged sick leave time reinstated, shows that there was no adverse employment action.  *See West v. Maxon Corp.*, 2001 WL 1712511 *2 (S.D. Ind.)(there is no adverse employment action for denial of overtime when plaintiff testified that she turned down overtime assignments).  In addition, for the same reasons given with regard to Plaintiff Paiz, any loss in Plaintiff Cynthia Orr's ability to accumulate compensatory time did not significantly impact her employment status or benefits.

Finally, Plaintiff Cynthia Orr argues that during her second pregnancy she experienced adverse employment actions when 1) she was denied appropriate FMLA leave; 2) she suffered from work-related stress which led to the need for medical attention; 3) she had to go through

bureaucratic hoops; and 4) she was asked to return her patrol car.

Plaintiff Cynthia Orr argues that the Defendants engaged in an adverse employment action when she and her husband were told that they had to split 12 weeks of FMLA leave for the birth of their second child.  Plaintiff Cynthia Orr claims that she was not seeking parental leave under the FMLA but rather was seeking FMLA leave due to a serious medical condition, i.e., a planned cesarean section.  Consequently, she argues that she was entitled to eight weeks leave and her husband was entitled to 12 weeks of parental leave.  Although Plaintiff Cynthia Orr was approved for six weeks of FMLA parental leave, she nonetheless took eight weeks of FMLA leave because her doctor did not clear her to return to work until after eight weeks had elapsed.  Because Plaintiff Cynthia Orr received the eight weeks of leave that she first requested she did not suffer from an adverse employment action.

Next, Plaintiff Cynthia Orr argues that being subjected to a stressful work environment constituted an adverse employment action.  An adverse employment action must have a significant impact on the employee's employment status or benefits.  *Dunlap v. Kansas, Dept. of Health & Environment*, 211 F.Supp.2d 1334, 1342 (D.Kan. 2002).  Experiencing increased stress as a part of one's working conditions does not affect an employee's employment status or benefits.  *See, e.g., Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)(being reassigned to more stressful job does not constitute an adverse employment action); *Von Gunten v. Maryland Dept. of Environment,* 68 F.Supp.2d 654, 663 (D.Md. 1999), *aff'd*, 243 F.3d 858 (4th Cir. 2001)(same)(citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).  Furthermore, the stress and frustration Plaintiff Cynthia Orr endured when she had to deal with the personnel office to obtain leave for her second pregnancy amounted to no more than mere inconveniences, not

26

adverse employment actions.

Lastly, Plaintiff Cynthia Orr argues that the Defendants engaged in an adverse employment action when after the birth of her second child she had to return her patrol car for one day at the end of her FMLA leave.  Under the Assigned Take Home Vehicle Program at (II)(G) "when an individual is on sick leave, or injury time for five days or more, the APD vehicle will be turned in at the police garage, locked up, and will not be used except in an emergency."  The evidence indicates that Plaintiff Cynthia Orr was on FMLA leave for more than five days and so was required to turn in her patrol car.  A reasonable jury could not find that requiring Plaintiff Cynthia Orr to comply with the Assigned Take Home Vehicle Program even though she had the use of her patrol car for most of her FMLA leave amounts to an adverse employment action.  A reasonable juror would not find that Plaintiff Cynthia Orr suffered an adverse employment action with respect to either her first or second pregnancy.

3. Whether the Defendants Treated Similarly Situated Employees Differently

Defendants argue that, even if it is assumed that the female Plaintiffs have shown that they suffered from an adverse employment action, the female Plaintiffs cannot prevail because Defendants did not treat similarly situated employees differently.  To support that argument the Defendants note that Defendant Vigil changed the leave records of Plaintiff Stephen Orr and Richard Dilley as soon as she found out that they had taken compensatory time for their parental leave.  The Defendants also note that Defendant Vigil tried to change Deputy Chief Davalos' FMLA leave in the same way although she could not determine what compensatory time Deputy Chief Davalos took for FMLA purposes.  The Plaintiffs argue, on the other hand, that there is evidence that other male officers and non-pregnant female offices took compensatory time for

FMLA leave.  Even if that is true, the Plaintiffs have nonetheless failed to present any evidence that, as in the cases of the Plaintiffs, Richard Dilley, and Deputy Chief Davalos, the personnel office knew that those other APD employees were using compensatory time for FMLA purposes. Defendant Vigil has stated that if she had known that other officers were taking compensatory time for FMLA purposes she would have changed that FMLA leave to sick leave as she did for the Plaintiffs and Richard Dilley.  Furthermore, the Plaintiffs admit that the Defendants upset male APD officers by retroactively changing the leave records of those officers to reflect the use of sick leave for FMLA leave.  A reasonable jury would not find that the female Plaintiffs were treated differently from other similarly situated APD officers.  In sum, a reasonable jury would not find that the female Plaintiffs have established a *prima facie* case of sex and pregnancy discrimination under the PDA and Title VII.  Accordingly, the Defendants are entitled to summary judgment with respect to the female Plaintiffs' claims of sex and pregnancy discrimination under the PDA and Title VII.

    F.  Title VII:  Retaliation

    The Defendants further argue that they are entitled to summary judgment on the Plaintiffs' Title VII retaliation claims.  Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . under this subchapter."  42 U.S.C. §2000e-3(a).  In analyzing Title VII retaliation claims, courts apply the burden-shifting approach set forth in *McDonnell Douglas*.  A plaintiff must first establish a *prima facie* case of retaliation. 411 U.S. at 802-04.  In order to establish a *prima facie* case of retaliation, the plaintiff must show that (1) he or she engaged in

protected conduct; (2) he or she was subject to an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). Once the plaintiff makes a *prima facie* showing, the defendant must articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* The plaintiff must then respond by showing that the defendant's reasons for the adverse employment action are pretextual. *McDonnell Douglas*, 411 U.S. at 802-04; *O'Neal*, 237 F.3d at 1252.

      1.  Plaintiff Stephen Orr

The undisputed facts indicate that Plaintiff Stephen Orr engaged in protected conduct by offering to be a witness in the female Plaintiffs' EEOC proceedings and in filing an EEOC charge in January 2001. The parties dispute whether the Defendants subjected Plaintiff Stephen Orr to an adverse employment action when 1) Defendant Vigil changed his parental leave the day after the EEOC mediation; 2) Defendants denied Plaintiff Stephen Orr's requested parental leave for his second child; and 3) Plaintiff Stephen Orr's work environment became so stressful during his wife's second pregnancy that he required emergency medical treatment for stress-induced angina.

As with Plaintiff Paiz, the Defendants argue that there was no adverse employment action with respect to the birth of Plaintiff Stephen Orr's first child because Plaintiff Stephen Orr's first parental leave was subsequently changed to reflect the use of compensatory time instead of sick leave. The Plaintiffs, however, argue without citing any supporting authority that the Defendants merely mitigated Plaintiff Stephen Orr's financial damages when they reinstated his sick leave time and allowed him to use compensatory time. On the other hand, cases analogous to this one have found that the subsequent decision of an employer to rescind an otherwise harmful employment

action does not make that initial employment action adverse for Title VII purposes unless the employee suffered a tangible harm.  *See Pennington*, 261 F.3d at 1267 and cases cited therein.  Those cases do not frame the issue as one related to mitigation of damages.  The Court concludes as a matter of law that the issue of mitigation of damages is inapplicable to the question of whether the Defendants' ultimate decision to change Plaintiff Stephen Orr's parental leave back to the use of compensatory time constituted an adverse employment action.  In addition, a reasonable jury would not find that Defendant Vigil's actions with regard to Plaintiff Stephen Orr's first parental leave amounted to an adverse employment action in view of the fact that the Defendants reinstated his sick leave and Plaintiff Stephen Orr suffered no harm to his employment status or benefits prior to that reinstatement.

Plaintiff Stephen Orr also argues that the Defendants engaged in an adverse employment action when they refused to allow him to take the full 12 weeks of FMLA leave for the birth of his second child and instead forced him to share the 12 week period of FMLA leave with his wife.  29 C.F.R. §825.200(a)(1) states that an employee can take 12 weeks of FMLA leave for the birth of a child or to take care of the child after birth.  29 C.F.R. §825.202(a) states, however, that

> [a] husband and wife who are eligible for FMLA leave and are employed by the same covered employer may be limited to a combined total of 12 weeks of leave during any 12-month period if the leave is taken: (1) for the birth of the employee's son or daughter or to care for the child after birth.....

29 C.F.R. §825.202(c) states that

> [w]here the husband and wife both use a portion of the total 12-week FMLA leave entitlement for one of the purposes in paragraph (a) of this section, the husband and wife would each be entitled to the difference between the amount he or she has taken individually and 12 weeks for FMLA leave for a purpose other than those contained in paragraph (a) of this section.

Here, Plaintiff Stephen Orr wanted to take FMLA leave for the birth of his second child and his wife wanted to take FMLA leave for a serious medical condition in connection with her second cesarian section.  29 C.F.R. §825.202(a)'s combined 12 week limitation is not applicable in this case because only one spouse wanted to take FMLA leave for the birth of a child.  29 C.F.R. §825.202(c) is likewise inapplicable because Plaintiffs Stephen Orr and Cynthia Orr did not both use a portion of the 12 week FMLA leave for the birth of a child; only Plaintiff Stephen Orr did.  Under these circumstances, there is a question of material fact as to whether the Defendants' restriction of Plaintiff Stephen Orr's FMLA leave to less than 12 weeks for the birth of his second child constituted an adverse employment action.

The next issue then is whether there is evidence of a causal connection between Plaintiff Stephen Orr being named as an EEOC witness and filing an EEOC charge in January 2001, and the Defendants' decision more than a year later to limit Plaintiff Stephen Orr's FMLA leave for the birth of his second child.  A "'causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)(quoting *Burrus v. United Telephone Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982)).  If an adverse employment action is not proximately related in time to the protected activity, the plaintiff must show additional evidence of causation.  *Id.*  In this case, the temporal proximity between Plaintiff Stephen Orr's protected activity in January 2001 and the Defendants' failure more than a year later to grant his full FMLA leave for the birth of his second child is too great to provide an inference of retaliatory motive.  *See id.* (four month period does not establish a causal connection); *Richmond v. Oklahoma University Bd. of Regents*, 1998

31

WL 747093 **3 (10th Cir.)("A time lapse of one year is too great to draw a causal

connection...."). The Plaintiffs, moreover, have failed to provide additional evidence of causation.

A reasonable juror would not find a causal connection between Plaintiff Stephen Orr's protected

activities and the Defendants' refusal to grant him 12 weeks of parental leave for the birth of his

second child.

Finally, Plaintiff Stephen Orr complains that the stress he suffered in trying to arrange

parental leave for the birth of his second child constituted an adverse employment action. Like his

wife's increased level of stress with her second pregnancy, Plaintiff Stephen Orr's stress did not

significantly impact his employment status or benefits. A reasonable juror would, therefore, not

find that the stress Plaintiff Stephen Orr experienced as a result of obtaining his second parental

leave constituted an adverse employment action. In sum, the Plaintiffs have failed to establish a

*prima facie* case of retaliation against Plaintiff Stephen Orr. Consequently, the Defendants are

entitled to summary judgment on Plaintiff Stephen Orr's claim of retaliation under Title VII and

Plaintiffs' Motion for Partial Summary Judgment will be denied as to that claim.

2.   Plaintiff Cynthia Orr

With regard to Plaintiff Cynthia Orr, the Plaintiffs contend that she suffered from adverse

employment actions when 1) because of the female Plaintiffs' EEOC proceedings, male APD

officers reacted hostilely toward her after they learned that their leave records were being changed

retroactively to reflect the use of sick leave under the FMLA; 2) Defendants denied Plaintiff

Cynthia Orr leave for a serious health condition related to the birth of her second child; 3) Plaintiff

Cynthia Orr's work environment became so stressful she was hospitalized once for stress-induced

problems with her second pregnancy; and 4) the Defendants removed Plaintiff Cynthia Orr's

patrol car.

In the Tenth Circuit, "co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998). "[A]n employer can only be liable for co-worker's retaliatory harassment where its supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." *Id.* at 1265 (citation omitted). Some co-worker hostility, however, "can 'be attributed to an increase in predictable tension in the office after a discrimination charge is filed,' and is not adverse employment action." *Dick v. Phone Directories Company, Inc.*, 265 F.Supp.2d 1274, 1285 (D.Utah 2003)(quoting *Fortner*, 934 F.Supp. at 1268 (internal quotations omitted)).

In this case, the Plaintiffs did not present evidence that the alleged co-worker hostility was orchestrated by the Defendants or that they knew about the hostility and acquiesced in it so as to condone and encourage the actions of the male APD officers. Moreover, the Plaintiffs have failed to present evidence that the co-worker hostility was sufficiently severe to constitute an adverse employment action.

As already discussed, the actions taken by the Defendants during and after Plaintiff Cynthia Orr's second pregnancy do not amount to adverse employment actions. In conclusion, a reasonable juror could not find that the Plaintiffs' established a *prima facie* case of retaliation against Plaintiff Cynthia Orr. Accordingly, the Defendants are entitled to summary judgment on Plaintiff Cynthia Orr's claim of retaliation under Title VII.

3. Plaintiff Paiz

The Defendants contend that Plaintiff Paiz cannot now allege retaliation because she never brought an EEOC charge of discrimination for any alleged retaliation.   In addition, Defendants argue that even if Plaintiff Paiz has exhausted her administrative remedies with respect to the alleged retaliation, their actions toward Plaintiff Paiz did not amount to an adverse employment action.  The Plaintiffs contend that Plaintiff Paiz's retaliation claims are not barred for failure to exhaust administrative remedies.  The Plaintiffs also contend that the Defendants engaged in adverse employment actions against Plaintiff Paiz when 1) they charged Plaintiff Paiz's parental leave to sick leave after she met with APD officials to complain about the proposed change to her parental leave; and 2) male APD officers were hostile to Plaintiff Paiz for pursuing the EEOC complaint.

"[A]n act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." *Brown v. Hartshorne Public School Dist. No. 1*., 864 F.2d 680, 682 (10th Cir. 1988).  Otherwise, "a discrimination claim may not be filed in federal court before administrative remedies have been exhausted." *Id*.  Plaintiff Paiz has alleged that Defendants' first act of retaliation was the change of compensatory time to sick leave which occurred prior to the filing of her EEOC charge. Under those circumstances, Plaintiff Paiz would have been required to file an EEOC charge of retaliation.  Since Plaintiff Paiz did not exhaust her administrative remedies with respect to that allegation of retaliation, she is barred from raising that claim now.  Plaintiff Paiz was, however, not required to file an EEOC complaint with respect to her hostility based retaliation claim which occurred after the EEOC mediation nor was she required to exhaust her administrative remedies

with regard to that retaliation claim. As with Plaintiff Cynthia Orr, the alleged co-worker hostility toward Plaintiff Paiz did not amount to an adverse employment action. A reasonable juror would, therefore, not find that the Plaintiffs established a *prima facie* case of retaliation against Plaintiff Paiz. The Defendants are, therefore, entitled to summary judgment on Plaintiff Paiz's claim of retaliation under Title VII.

G.  The NMHRA

A plaintiff's burden of establishing a *prima facie* case of discrimination under the NMHRA is identical to the plaintiff's burden under Title VII. *Gioia v. Pinkerton's Inc.*, 194 F.Supp.2d 1207, 1220 (D.N.M. 2002)(citing *Cates v. Regents of the New Mexico Institute of Mining & Technology*, 124 N.M. 633, 638, 954 P.2d 65, 70 (1998)). *See also Sonntag v. Shaw*, 130 N.M. 238, 2001-NMSC-015 ¶27. Since the Plaintiffs have failed to present evidence of a *prima facie* case of sex and pregnancy discrimination or retaliation under Title VII, the Court concludes that the Plaintiffs have likewise failed to present evidence of a *prima facie* case of sex and pregnancy discrimination or retaliation under the NMHRA. The Defendants are, therefore, entitled to summary judgment with respect to the Plaintiffs' NMHRA claims.

H.  Breach of Contract

Since the Court will dismiss all of the Plaintiffs' claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state breach of contract claim. *See* 28 U.S.C. §1367(c)(3). Accordingly, the state breach of contract claim will be dismissed without prejudice.

35

I.  Defendants' Request for Attorney's Fees and Costs

Although the Defendants will prevail on their Motion for Summary Judgment, the Court finds that the Plaintiffs' claims are not so frivolous as to justify awarding the Defendants the attorney's fees and costs they incurred in bringing their Motion for Summary Judgment.  The Defendants' request for attorney's fees and costs will be denied.

IT IS ORDERED that:

1.  Defendants' Motion for Summary Judgment (Doc. No. 39) is granted in part;

2.  Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 102) is denied;

3.  Defendants' request to strike various portions of the Plaintiffs' briefs is denied;

4.  Counts I, II, II, IV, and VI will be dismissed with prejudice;

5.  Count V will be dismissed without prejudice; and

6.  Defendants' request for attorney's fees and costs is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE